UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

LEISA ROSAS,                                                             3:13-cv-2160-TC
o/b/o I.M.B.

                         Plaintiff,                                 ORDER

                         v.

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

COFFIN, Magistrate Judge:

Plaintiff I.M.B., a minor, through his mother, Leisa Rosas, brings this proceeding to obtain judicial review of the Commissioner's final decision denying plaintiff's application for supplemental security income benefits.

Plaintiff alleges disability beginning June 1, 2010 due to asthma, attention deficit hyperactivity disorder (ADHD), febrile seizures, and mental/emotional difficulties. After a hearing, an administrative law judge (ALJ) determined that plaintiff is not disabled.

An individual under the age of 18 is considered disabled if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous

Page 1 - ORDER

period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). Similar to the usual five-step process for evaluating disability claims, the determination of childhood disability follows a three-step sequential analysis:

(1) Is the child engaged in substantial gainful activity? If so, the child is not disabled, regardless of his medical condition, age, education, or work experience. If not, the analysis proceeds to step two. 20 C.F.R. § 416.924(a), (b).

2) Does the child have a medically determinable impairment or combination of impairments that is severe, i.e., that causes more than minimal functional limitations? If not, the child is not disabled. If so, the analysis proceeds to step three. 20 C.F.R. § 416.924(a), (c).

(3) Does the child's impairment or combination of impairments meet, medically equal, or functionally equal a listing? If not, the child is not disabled. If so, and the duration requirement is satisfied, the child is disabled. 20 C.F.R. § 416.924(a), (d).

To meet or medically equal a listing, the child's impairments must meet or medically equal a set of criteria for the particular impairment as outlined in the Listings, 20 C.F.R. Part 404, Subpart P, App. 1. See 20 C.F.R. § 416.924(d); Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ( impairment must meet all of the specified medical criteria).

To determine whether a child's impairments functionally equals a listing, the ALJ must assess the functional limitations caused by the child's impairments in six domains: (I) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(a), (b)(1). A child's impairments functionally equals a listing when it is of listing-level severity, i.e., if it results in "marked" limitations (limitations that interfere

seriously with the child's ability to independently initiate, sustain, or complete activities) in at least two domains of functioning, or "extreme" limitations (limitations that interfere very seriously with the child's ability to independently initiate, sustain, or complete activities) in at least one domain of functioning. 20 C.F.R. § 416.926a(a), (d) (e).

The ALJ determined that plaintiff has not engaged in substantial gainful activity since June 24, 2010, that he has the sever impairments of adjustment disorder and ADHD, but that his impairments did not meet or medically equal the severity of one of the listed impairments. Plaintiff contends that the ALJ erred in: (1) rejecting the opinion of a treating physician; (2) rejecting plaintiff's mother's testimony and reports; and (3) failing to have the case evaluated by an expert.

Dr. Lyn Jacobs completed a form in which she found plaintiff to be markedly limited in the area of acquiring and using information and extremely limited in the areas of attending and completing tasks, interacting and relating with others, and health and physical well-being. Tr. 467-68. The ALJ rejected this opinion because the form[1] on which the opinion was made did not adequately delineate the requirements in each domain. Tr. 22. In addition, the ALJ noted that Dr. Jacobs's findings, if correct, would likely require institutionalization.[2] The ALJ also found the opinion inconsistent with Dr. Jacobs's underlying treatment notes and noted it appeared to be based

---

[1]Plaintiff argues that the ALJ improperly rejected the opinion because it was provided a on a check-the-box form. See Garrison v. Colvin 759 F.3d 995, 1013 (9th Cir. 2014) (ALJ errs in rejecting an opinion on a check-box form if he fails to recognize it is based on experience with the claimant and supported by numerous records). Here, however, the ALJ did not reject the opinion because of the manner in which it was stated, he noted issues with underlying treatment notes and the apparent faulty criteria the doctor relied upon in evaluating the domains.

[2]Plaintiff implies that his emergency room visit for suicidal ideation is tantamount to institutionalization. The record does not support such level of treatment. Tr. 470-72. The record demonstrates occasional prior episodes, that medications providing adequate relief and does not suggest repeated hospitalization. Tr. 472.

Page 3 - ORDER

more on subjective complaints rather than objective findings. Tr. 22. Accordingly, the ALJ gave greater weight to medical consultants who opined plaintiff had limitations in the domains inconsistent with disability. Tr. 22. Finally, the ALJ found Dr. Jacobs's opinion inconsistent with the report of plaintiff's teacher, Ashley Krill. Tr. 22-23.

The ALJ did not err in determining that Dr. Jacobs's definitions of "extreme" limitations with respect to the domains were inconsistent with the social security regulations. For instance, the regulations provide the following examples of functionally equivalent limitations in health and physical well-being:

> (1) Documented need for major organ transplant (e.g., liver).
>
> (2) Any condition that is disabling at the time of onset, requiring continuing surgical management within 12 months after onset as a life-saving measure or for salvage or restoration of function, and such major function is not restored or is not expected to be restored within 12 months after onset of this condition.
>
> (3) Effective ambulation possible only with obligatory bilateral upper limb assistance.
>
> (4) Any physical impairment(s) or combination of physical and mental impairments causing complete inability to function independently outside the area of one's home within age-appropriate norms.
>
> (5) Requirement for 24–hour–a–day supervision for medical (including psychological) reasons.
>
> (6) Infants weighing less than 1200 grams at birth, until attainment of 1 year of age.
>
> (7) Infants weighing at least 1200 but less than 2000 grams at birth, and who are small for gestational age, until attainment of 1 year of age. (Small for gestational age means a birth weight that is at or more than 2 standard deviations below the mean or that is below the 3rd growth percentile for the gestational age of the infant.)
>
> (8) Major congenital organ dysfunction which could be expected to result in death within the first year of life without surgical correction, and the impairment is expected to be disabling (because of residual impairment following surgery, or the

recovery time required, or both) until attainment of 1 year of age.

20 C.F.R. § 416.926a(m). However, Dr. Jacobs's explanation for a finding of extreme limitation in this domain is that plaintiff "has several conditions that [arise] during a 12 month period. 1) asthma exacerbated (moderate persistence) 2) ADHD 3) dysthymia 4) overanxious disorder of childhood ... recent exacerbation of dysthymia ... adjustment disorder." Tr. 468. The ALJ reasonably determined that the explanation does not correlate with the regulations.

As a further example, Dr. Jacobs assessed plaintiff as extremely limited in interacting and relating to others. Tr. 467. She explained that plaintiff "often gets physical and out of control even with medication worsening with age. Physical altercations often police are called in to mediate." Tr. 467. However, the regulations contemplate issues such as the following examples in this area:

> (I) You do not reach out to be picked up and held by your caregiver.
>
> (ii) You have no close friends, or your friends are all older or younger than you.
>
> (iii) You avoid or withdraw from people you know, or you are overly anxious or fearful of meeting new people or trying new experiences.
>
> (iv) You have difficulty playing games or sports with rules.
>
> (v) You have difficulty communicating with others; e.g., in using verbal and nonverbal skills to express yourself, carrying on a conversation, or in asking others for assistance.
>
> (vi) You have difficulty speaking intelligibly or with adequate fluency.

20 C.F.R. § 416.926a(i)(3).

Dr. Jacobs assessed plaintiff with extreme limitations in attending and completing tasks stating plaintiff "has attention deficit disorder and judgment issues. He is at times unable to control his impulses even with medication.... He needs supervision at school and has an IEP in a special

small size class and he needs supervision at home - often does not make wise choices." Tr. 467. The regulations, on the other hand, list the following examples of limitations the Administration considers with respect to attending and completing tasks:

> (I) You are easily startled, distracted, or overreactive to sounds, sights, movements, or touch.
>
> (ii) You are slow to focus on, or fail to complete activities of interest to you, e.g., games or art projects.
>
> (iii) You repeatedly become sidetracked from your activities or you frequently interrupt others.
>
> (iv) You are easily frustrated and give up on tasks, including ones you are capable of completing.
>
> (v) You require extra supervision to keep you engaged in an activity.

20 C.F.R. § 416.926a(h)(3). In addition, as noted above, "extreme" limitations are ones that interfere very seriously with the child's ability to independently initiate, sustain, or complete activities. The ALJ's determination that an inability to control impulses at times and a need for some supervision does not rise to the level of extreme is supported by the record. The ALJ did not err in finding Dr. Jacobs's definitions out of sync with the regulations. See Orteza v. Shalala 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may reject an opinion, to the extent it suggests disability, if it does not appear to be based on the proper definitions from the regulations).

The ALJ also appropriately determined that Dr. Jacobs's treatment notes were inconsistent with her opinion. While plaintiff may not agree with the ALJ's interpretation, it is sufficient that the ALJ's interpretation is supported by substantial evidence. Dr. Jacobs's notes indicate that plaintiff is doing well developmentally. Tr. 301. Indeed, in the treatment notes plaintiff cites as indicative

of an inability to control behavior and a need for "constant" supervision, it is stated that plaintiff's teacher said he is doing very well and she has seen a lot of improvements, but that plaintiff's mother was hesitant to believe this even though she thinks he is improving as well. Tr. 274. In other progress notes, it is noted that plaintiff has had a positive response to medication and clear speech, Tr. 322, and that plaintiff was doing "very, very well" without difficulty to change, Tr. 316. The ALJ further noted treatment notes indicating that plaintiff has not presented with wheezing despite his asthma, and that his Children's Global Assessment Scale scores showed moderate to variable functioning with sporadic difficulties. Tr. 22, 251, 326, 333, 346, 354. Plaintiff does note instances of his mother reporting eruptions resulting in the police coming to their home, but that same note shows he made the honor role at school. Tr. 361. It should also be noted that plaintiff's behaviors are noticeably different when he is non-compliant with his medications. E.g., Tr. 279. The ALJ provided sufficient reasoning for rejecting Dr. Jacobs's opinion. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancy between doctor's notes and opinion provide clear and convincing reason for rejecting medical opinion).

Plaintiff next contends that the ALJ erred in rejecting the testimony and reports of plaintiff's mother.[3] Plaintiff's mother provided testimony and reports indicative of disability, but plaintiff's teacher of about two months, Ashley Krill, reported that plaintiff had no more than slight problems in acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for himself, health and physical well-being.

---

[3]Plaintiff suggests that the standard for rejecting this testimony is the same as the clear and convincing standard afforded to a plaintiff's subjective symptom testimony. However, plaintiff's mother is a lay witness providing her observational testimony and cannot be said to provide testimony about the subjective level of limitations necessitated by underlying symptoms. Accordingly, the ALJ need only provide germane reasons for discounting such testimony.

Page 7 - ORDER

Tr. 162-167. The ALJ reasonably accepted Krill's opinion as it was consistent with reviewing physicians and based on her personal observations in a school setting on daily basis for several hours at a time in an environment in which plaintiff interacted with other children.

The ALJ, moreover, found that plaintiff's mother's statements were inconsistent with the medical evidence and the ALJ appropriately discounted those statements with reasons germane to those statements. For example, plaintiff's mother reported debilitating ADHD, but the medical record does not support this statement as noted above. Accordingly, the ALJ did not err with respect to his treatment of plaintiff's mother's statements.

Finally, plaintiff asserts that the ALJ erred in failing to have the case evaluated by an expert. Although the Ninth Circuit determined in Wolff v. Barnhart, 341 F.3d 1006, 1014 (9th Cir. 2003), that a remand was necessary for a "case" evaluation as opposed to the apparent "individual" evaluations of separate specialists, that case was decided prior to the adoption of final rules regarding the evaluation of the disability of a child under 18. The statute at issue in that case provides

> In making any determination under this title ... with respect to the disability of an individual who has not attained the age of 18 years ..., the Commissioner of Social Security shall make reasonable efforts to ensure that a qualified pediatrician or other individual who specializes in a field of medicine appropriate to the disability of the individual (as determined by the Commissioner of Social Security) evaluates the case of such individual.

42 U.S.C. 1382c(a)(3)(I).

Current regulations demonstrate that ALJ's may rely on a case evaluation by a state agency medical or psychological consultant that is already in the record.[4] See 69 FR 22578-03 found at

---

[4] In fact, the Wolff court noted that "[i]t may be that the ALJ achieved substantial compliance with the statute, in that the state agency doctors ... who did evaluate [the] case, may be appropriate qualified specialists. Wolff 341 F.3d at 1014.

Page 8 - ORDER

2004 WL 875081, at *22580 ("To satisfy this requirement, the ALJ ... may rely on case evaluation made by a State agency medical or psychological consultant that is already in the record, or the ALJ ... may rely on the testimony of a medical expert."). In this case, four state agency doctors, including psychologists and pediatricians provided the case evaluations. Tr. 49-53, 60-63. Because these evaluations were based on the case as a whole, rather than only with respect to discrete specialities, by qualified specialists, the ALJ did not err with respect to case evaluation and the decision of the Commissioner is affirmed.

## CONCLUSION

For the reasons stated above, the decision of the Commissioner is affirmed.

DATED this 3 day of December 2014

_____
THOMAS M. COFFIN
United States Magistrate Judge